Good morning, ladies and gentlemen. Before we begin, I'd like to advise appellants, if you have reserved any time for rebuttal or wish to reserve any time for rebuttal, I'd appreciate your letting me know at the beginning of your arguments, and the clerk may call the first case. Case number 1475-75, 1438-33, 1438-34, and 1438-33, Jim Gibson v. Forest Hills Local School District, oral argument effective 8 minutes per side. Mr. Gibbs for due account. Good morning. Your Honor, I'd like to reserve two minutes for rebuttal, please. You may. May it please this Court, my name is William Dieters of Ennis, Britain, on behalf of the Forest Hills School District Board of Education. Your Honor, the facts and issues before this case, although it may seem quite complex because there was over 28 days of hearing and about 7,000 pages of testimony, I really believe that as the Court begins to look at these issues before it, that it actually is a rather simple case. Forest Hills School District believes that Chloe Gibson is a special person who can be a productive member of society, a happy person if she is provided the opportunity to work in a supported community, which provides recreational and leisure activities as well as work activities, a type of community and environment that would not necessarily provide a competitive work environment. One of the big disputes between the school district and the family in this case has always been on what that vision for Chloe is in the future. The issues before the Court are really threefold. Did the district court improperly dismiss the appeal of the portion of the state-level review officer's due process decision when the matter was fully reviewed and both state and federal law require an independent modified de novo analysis? Number two, did the district court err in not providing the state review officer's decision the deference that it is required to provide when examining issues of educational policy? And number three, should a student's IEP be examined in its entirety to determine by a preponderance of evidence if the student received FAPE? I'd like to just take a few minutes to provide a few facts about Chloe Gibson. At the time of these proceedings, she was approximately 19 years of age. There's indisputed evidence at the hearing that demonstrated that her cognitive abilities and her functional adaptive behavior abilities was out of a 3- to 5-year-old child. She had significant cognitive disabilities. She suffered from frequent seizures, and these seizures not only were a physical problem for Chloe, but they also impacted her ability to learn and how she learned and how she retained the information that she learned. She had adaptive behavior deficits, and she had gross and fine motor deficits. However, Chloe, during her time at the Forest Hills Local School District, made tremendous progress. All three, the independent hearing officer, the state-level review officer, and the district court said there was overwhelming and significant evidence that she was provided a benefit. To quote some of the language, they said she progressed and benefited from her educational program in areas of behavioral, socialization, transition... What are you quoting from? Your Honor, I'm quoting from the state-level review officer's decision... Yeah, I've got that. Thank you. ...that she made significant progress in areas of behavior, socialization, transition, vocational task, and daily living task. There is simply no evidence at any time in this record to support anything other than the conclusion that Chloe made substantial and significant educational and meaningful progress as a result of the IEPs designed and implemented by the Forest Hills School District. What point of error are you focused on right now? Your Honor, I think there's two points of error we're focused on. Number one is a procedural error, and that is... Exhaustion point? It's the exhaustion point, Your Honor. Correct. And there's two aspects to that. The district court dismissed the district's appeal, indicating that there had been no exhaustion of administrative remedies. However, if you just look at case law on that particular issue alone, because of the process by which IDEA appeals come before the courts, the state-level review officer has an obligation to hear that case independently de novo. And it has the ability to make decisions and to allow sides to argue cases, whether they were appealed or not appealed, because of that entire review of the record. In fact, the state-level review officer... That's true. I mean, forfeited arguments, judges have discretion to review, but that doesn't get rid of the exhaustion rule. It doesn't make it an illegitimate tool for winnowing down issues. I mean, that's one of the nice features of exhaustion. You get input from the experts, and when someone doesn't appeal something, ideally, particularly in a case that's lasted seven years, the focus gets sharpened and there are fewer issues, ideally. I would say in a typical situation that would be the case, but not how the Ohio Administrative Code sets up the issue for state-level review officers to hear independent hearing officers' decisions. The Administrative Code specifically indicates that they are to hear that independently and take the entire record under review. Then does that mean you don't need to tell him anything in order that he or she has to scour the record for anything that's in there? Your Honor, all the information and evidence that would have been necessary to make that opinion was fully briefed and all evidence was in the record. Well, you say fully briefed. I mean, in what sense did you brief it and therefore argue it, but not say that you were going to appeal that issue? All the evidence related to whether or not to go to the issue regarding whether... I'm not interested in what evidence was before the IHO. What told the SLRO that this was something that they should worry about? Well, the school district's brief, Your Honor, indicates...the issue is whether or not she received a free and appropriate public education. And the IHO had determined that the goals for reading and the goals for math should have been more aggressive. And the school district, through its brief and through the evidence at hearing, showed that those goals and objectives were appropriate. So the real argument is that you briefed it even though you didn't formally, what, state it as the items of appeal? Maybe I should discuss a little bit of why the district chose not to appeal it. This had been a long, drawn-out process. Well, so you just said you chose not to appeal it. Yeah. Counsel, let me skip because perhaps your bigger point, I thought, was the finding by the district court overturning the SLRO that you had to provide these transition services. I have two questions. One is, with respect to both the math and reading services and the transition services, which weren't stayed, have they all been provided or are they still going on? Your Honor, perhaps the opposing counsel could talk about where they are in that process, but the arrangements were made for all that to be done. I don't know at this point, factually, how much of that is done. That's just theirs. Okay, fine. Right. Do you know what's been paid? You don't know what's been done or paid? Your Honor, all the funds have been appropriated, so as the services are completed, the district is making payments. Directly. Correct. So then with respect to the transition, alleged lack of appropriate transition services, I take it your basic position is that whether you met every exact procedural requirement, you came up with an IEP that, in fact, gave her the right kind of transition planning to be an appropriate FAPE given her circumstances. Is that correct or mistaken? That is one component of that, Your Honor. That is absolutely correct. What other components? Looking at the by IEP as a whole, regardless if you would determine whether or not the transition services were done well or not well or appropriately, it's still providing a benefit. But secondly, specifically looking at the transitional services, the Ohio Administrative Code allows that transitional services to be developed and delivered through an IEP. And Chloe's IEP, because of the nature of her disabilities, the entire IEP was, in essence, a transitional services document. And the Ohio Administrative Code permits that to be the case. It also permits special educators to be the ones to provide those types of services. So the state-level review officer determined that those transition services were appropriate. She, on her own, determined that. The district court did not provide deference to that, did not cite to any preponderance of evidence that would indicate that there's anything else in the record to suggest otherwise. Do the services have to include testing of some sort that might not have been able to be done in this informal setting that appears to be the method that was used? There's nothing under the law, Your Honor, that requires that that vocational assessment or that those transitional assessments be a formalized process, that it be standardized, that it be anything like that. You have to take into consideration the nature of the student's disabilities and the student's strengths and desires. Chloe had already demonstrated that she did not do well in standardized testing. I think the record's pretty clear about that. Initially, the whole focus of Chloe's IEP and the program that she was in was to prepare her for life after school. So she did things like sorting and functional reading. Goodwill came in and did some testing. That was part of the independent hearing officer asked for a vocational assessment for her own information in the case, which the SLO determined was not necessary. But the interesting thing about that, when Goodwill came in and observed her, they came to almost the exact same conclusions that the school district had about what the most appropriate placement for Chloe would be for life after school. So the district's assessment of her was a continuous, ongoing process because her IEP was a transitional service document. And like all IEPs, you had to monitor the progress the student was making, adapt and adjust, and continuously provide services related to that. If I could just go back for a second on the issue regarding the failure to exhaust remedies. I also believe that there are cases out there that I'd like to point the court to look at in examining that issue. One case is a case out of Minnesota that's cited in the appellant's brief where a school did not timely file an appeal. And the Minnesota system is very similar to Ohio's. The parents objected to that situation where the school did not timely file. The Minnesota court in that situation held exactly what we're asking this court to review and determine that because all the evidence was in the record, and because it was fully litigated, and because it required an extensive review. Are you referring to a district court case? Your Honor, that's a Minnesota Court of Appeals case, but it has very similar facts. State court case? Yes. There are also a Second Circuit case in 2010 called- Did they actually file something? It was just out of time? They filed it, but it was out of time, Your Honor. Right. But we would- The court forgave that. Doesn't that seem a little different? I mean, that's trying. You have a problem of- Your Honor, I think the difference is that if I file a document and say I'm giving you a notice of appeal, that I'm appealing on these three issues, as opposed to the other side appeals an issue and you say, now, since you have to review the entire record, state-level review officer, which is your obligation under law, here are three other errors that we believe the independent hearing officer made. In this particular case, the SLRO on her own, even though the plaintiffs didn't appeal, found- But what I'm- Listen, I don't know the case. I'm just trying to figure out what you're trying to get at. That sounds like a case where the key point was they forgave the lack of timeliness. I mean, and they said, listen, I realize this is late, but we'll accept it and then we'll address it. That doesn't seem like an exhaustion case. That's a case about extending the time. If you look at the court's rationale, the rationale was that everything was in the record already, so it doesn't require you to give me a notice because I have to review the entire thing anyway. I have to review the lower level's decision. It sounds like you don't have to appeal anything. Well, Your Honor, I think that it doesn't get to the second level unless there's appeal, but once one side appeals, it sort of establishes the jurisdiction for the SLRO under the Ohio Administrative Code that now, since I have this in my hand, I have to review the entire record to determine if the IHO did what she was supposed to do. And there were three points that in this particular case- Is that the best case you have on this? No, Your Honor. There's a Second Circuit case that we've cited as well in 2010. What happened there? It allowed a parent to appeal and move forward. They didn't appeal initially an issue regarding some homework assignments, but they brought it forward in the brief. Just let me say what I'm saying. It was another late appeal where they allowed the appeal even though it came after the deadline? They did not appeal in that case, Your Honor, although the court ruled on something that the other side indicated that it should not have ruled on because there was not an appeal. And in that particular case, the court said all the evidence was in the record and was fully litigated. I see I'm out of time. Is your question answered? Thank you. Thank you. We'll have your two minutes for rebuttal. Good morning. May it please the court. This case is about Chloe Gibson, but not only about her. It has implications much broader than just her situation. Let me first address where we stand in terms of the relief that has already been provided. The independent hearing officer provided substantial relief for Chloe that included 480 hours of additional compensatory service. It included major rewrite of her IEP. It included assessments and other relief that was ordered. All that has been provided and is complete. The district court ordered additional transition services to be provided to Chloe. Again, very substantial services. Those services have been started, have been provided, and we believe we were on... Not entirely, but we are on schedule, I believe, to have those services fully completed probably by February of 2016. As to Chloe, there has been substantial relief, possibly even life-changing relief, in that she has been given all these additional services. If you look at just quantitatively, she has been provided almost the equivalent of a full school year beyond which she would have otherwise received, and qualitatively even more services. So Chloe's situation is what brings us here, but we also would urge the court to look broader. There are in this case very substantial legal issues that will have broader implications beyond the case, and we submit we'll make sure, with proper direction from this court to the school districts, we'll make sure no other child has to wait eight years in order to get the services they're entitled to. So the first question for the court is whether the IDEA, as amended in 2004, requires that once a student turns 16, they are entitled to have transition assessments related to training, education, and employment, and also whether the law now requires that their interests be considered, primarily under the regulations by inviting the child to any IEP meeting at which transition services are to be discussed. Let's talk about that as an example, because in a broad way here, your side points to certain procedural failings that definitely occur, and they say that in Gross they provided an adequate FAPE even if a bigger, better one would have been okay. So let's take the point about inviting her. Do you have any argument about what would have been served had she been present? That is, presumably either her parents were there, that she would have supported her parents, and given her cognitive difficulties, it's not very clear that she could have, or that she would have contradicted her parents. So the parents are saying she should have been there so she could contradict what I said. But is there any indication that having her there would in fact have done anything? I believe there is, and I would urge the Court to look in particular at the amicus brief in this case. There's very strong reasons why the law now requires, affirmatively requires the school district to invite the child to the meeting. I don't think the amicus, I mean, it's sort of not responsive in the sense the amicus isn't going to tell us what could have happened if Chloe had been there. You're the one that represents Chloe directly. In terms of Chloe in particular, had she been invited to the meeting, she would have had the ability to at least have the school district and even her parents see her expression, to the extent she was able, of what her... Didn't her mother testify that she would not have wanted her there? She would not have brought her even if she had been invited? I believe that was testimony in terms of historically how the meetings had been attended. I believe there was testimony, even from the school district representatives, the special education teacher, that there were things that could be done in order to prepare Chloe for those meetings. And there's also the... Her mother is testifying that she would not bring her because she didn't want her to be at these meetings where evidently people are screaming and yelling at each other? Under the law, if that was the situation, if the parent in this case said, no, Chloe should not come to the meeting, then under the law there was the second alternative that the school district still had to do something to actually determine what Chloe's interests and preferences would be. And because this is a... It's different than just the status quo. The 2004 amendments made specific emphasis on this transition once the child is 16. And there is an obligation at that point on the school district not to just follow the status quo. We've been observing this child all along. There is the affirmative... I'll go ahead. I'm sorry. So if there is no dispute, if we agree that that is what the law is, that 16 is an important time, there is a need for transition, we're still here on your case. Absolutely. And so the question becomes, what did Chloe get? And would Chloe have been brought to this if there had been a separate invitation? And if her parents would not have brought her, was she otherwise asked, either informally or formally with a teacher, the questions that would enable them to understand her desires for her future? And isn't that what's before us? We're bound by this record, aren't we? Yes. With respect to Chloe, that's absolutely what the record... But Chloe is the case. Chloe is the case, Your Honor. Yes, I agree with that. And what the testimony was, even if there was no other alternative, the testimony was from the school representatives themselves, there were things they could have done separately with Chloe outside the context of the meeting where they could have tried to identify better what her post-school goals were. But the testimony was that wasn't done. What the testimony shows... Well, is the question that... There's always something more that could be done. The question is, did it meet the requirements of the law? Isn't that the question? That's absolutely the question, Your Honor. I guess I'm just kind of struggling with why we're in seven years of this litigation. The services that were ordered below you say have been provided. The one issue that was really at odds here was whether transition services have been provided. They were ordered. You tell me in, you know, less than six months they will be completed, and I'm assuming the $35,000 has been paid along the way. Have you all been back to mediation? I'm just struggling with the fact that we've got this one very small transition issue. It is important, and the law is important, but the services have been ordered and she's getting them and she's gotten the other services. Is there not a way to resolve this? With respect to Chloe, Your Honor, the services, as you say, have been or shortly will be provided. But that's this case. So I'm asking you, is there not a method of resolving this together, people working together who have now provided the very things that have been ordered? Your Honor, I can say this. Of course, when we came to the Sixth Circuit, we did have a mediation session with the Sixth Circuit. It didn't resolve the case, is what I can tell you. I know we can't get into the details of that, but it did not resolve the case. In part, what's keeping the case alive is the school district's appeal on the issue of attorneys' fees. They're trying to establish that the Gibsons were not the prevailing party. Well, I understood that if they were not enabled to appeal their part of the case below, that they had agreed that the fees that were already ordered would not be challenged. Am I incorrect? The $300-and-some-odd thousand dollars, there is not a challenge to those if they are not allowed to go forward on their appeal. Is that right or wrong? They are challenging the award of attorneys' fees not the amount, but in the sense that they believe that the independent hearing officer's award should be found to have been improper and that the district court's award of the transition services should be found to be improper, such that they don't have to pay anything. I understand that. If your side lost and this court said, she didn't deserve any more transition services, we're done on that, then there might be a dispute as to the fees. But I understood that if they were not allowed to appeal, as they have requested, and your transition services is upheld, then they're not disputing the fee. They are not disputing the amount of the fee. No, you're right, Your Honor. It seems to me there's a pathway to resolution here. What she's saying is you've tried, and I think she's saying keep trying. Let me add just a follow-up question, which I think is consistent with what both of my colleagues are saying on the transition services. Just make sure I'm getting this. I have no problem with the broader picture point that we should say the process is critical and it's important to include the child in it. That seems to me pretty easy, straightforward, and appropriate, and I think a big part of what you want. But I thought the way this worked is if you have a process problem, it doesn't automatically follow that there's a substance problem. And so you may be right on the process, but I would have thought I think this is the way Judge Boggs was asking it, which, okay, the child wasn't included. To show that that led to a substantive problem, you need to come forward with an affidavit or something that says, well, here's what Chloe would have said and here's how it would have made a difference. So I'm not seeing that, and I don't understand. I mean, we don't usually grant substantive relief for non-prejudicial process problems, and so what am I missing on that? I think the proper way to look at this is there were two procedural issues. One was the failure to consider Chloe's own interest, preferences, and need. There was also, and I think this is a very significant issue, one I would hope the court would focus on, there was never a transition assessment related to education and training done. And that lack of... Never done or never done as of age 16. It was never done after she was the age of 16. They have never come forward and said, here's the transition assessments that were done to meet the requirements of the law after it was amended in 2004. And they say, well, we did this and we did that, and collectively it's the kind of assessment that would be good enough for this person. Is that a fair statement of their view? That's a fair statement. And if you accept that that's all that has to be done, you've just wiped out the amendments, the 2004 amendments. So as to this second point, you would say that by itself justified the district court's transition services award separate and apart from whether Chloe was included in the consultation? Yes, Your Honor, exactly. And I think... Again, your point when you say you would have wiped out the procedural requirements, again, if we go to the substance, then we have a somewhat different argument about whether what did happen met the fate. But you're saying that because the 2004 amendments have a significantly rigorous set of procedural requirements, those have to be met in order to meet the standards of the law. Absolutely, Your Honor. The point of the 2004 was once the child turns 16, the focus has to shift and include very specific focus on post-school life. And one of the important things, this was a major part of the 2004 amendments, was this concept that there must be transition assessments. And it was no longer good enough for the school to say, you know, we've been observing her all along. This was supposed to be something in addition to that. The SLRO in the findings, though, and correct me if this is wrong, did address the question of on the substance, did she get as much transition planning as would be useful in her case? Now, you disagree with its ultimate conclusion, but it didn't just ignore the transition, the substantive transition requirements. Is that fair? It's fair with this qualification, Your Honor. What the state level review officer said was the transition services were good enough based upon the goal the school district had established for Chloe. And this is the big difference between the parties. What we are saying is once she's 16, she needed these transition assessments so that the school district would have more information and maybe come to realize, as the Goodwill assessment does show, that they set her expectations too low and that these transition assessments would have provided that information. And, Your Honor, how that ties back to a substantive denial is without these assessments, there is no way that you can say that the goals that were set were age-appropriate and based upon assessments. They just didn't exist. When you say that they set the goals too low, how does that fit with what is an adequate FAPE? That is, I could imagine that a FAPE with goals here would be adequate, might be better or more accurate if the goals were up here, but that doesn't make the FAPE itself inadequate. Is that a sensible question? It's a very good question, Your Honor. And how I would respond to that is, again, I think we're talking somewhat of a new ballgame once the child is 16. The fact that there were educational goals, the fact that there was an IEP, and remember the IEPs were found to be inadequate by the hearing officer, and that has never been appealed. They're inadequate largely as to math and reading, isn't that? It was inadequate. What was awarded was math and reading, but they were found to have violated FAPE. And the hearing officer ordered that the IEPs for the first two years be redone, not just because of math and reading, but they be redone. But the point I was trying to make, it's one thing to say we don't dispute she was getting some educational benefits. What we dispute is that the new requirements in the 2004 amendments for these transition assessments, that's what she was denied, and as a result of being denied those assessments, she was denied the educational opportunities she was entitled to under the new law. Go ahead. I was going to say just as to timing, we try to get opinions out timely, but if for some reason we didn't get an opinion out in this case until February, wouldn't in the substantive part almost all be moot and we're just fighting about attorney's fees? Yes, in terms of this particular case. You only decide this case, but go ahead. No, but this case is an opportunity, I think, for the court to clarify for the school districts what the significance of the 2004 amendments were, such that you won't have this type of litigation again because the school districts aren't appreciating the fact that after 2004. Well, we will definitely do everything you want if it comes with a guarantee that we won't have this litigation again, but I'm pretty confident you can't offer that completely. But if I could move briefly from the sacred to the mundane, do you have anything interesting to say about attorney's fees? Yes, Your Honor.  Both in terms of the lack of the clarity or the analysis of how she somehow came to the conclusion that... My response to that is five pages. This is not just throwing a dart. The only thing she doesn't do, which I admire her for not doing, is attach specific percentages or dollar figures to the different reasons she wanted to reduce it from the Lodestar. I realize some people can do that, but that seems to me incredibly artificial and made up. I don't know. I get the point that there's supposed to be an explanation. It's supposed to be an explanation that's reviewable. But she did explain why it is she wasn't sticking with the Lodestar in some pretty serious ways. You're right. Why it's 60%, 40%, 30% is never explained. But I don't know the person that could perfectly capture that in words. I appreciate that, Your Honor. I think on the attorney's fees, I think the bigger issue is was there a qualitative assessment of the degree of success? And we think the district court underestimated that when you look at the relief that was ordered both by the independent hearing officer and herself. We believe our level of success was pretty good. Being a lawyer, just like being a judge, it's a thankless task. No one ever quite appreciates what we do. Thank you, counsel. No, it's a very thankful task, and I appreciate it. Thank you, Your Honor. Your time has expired. Mr. Dieters, you have your remaining time for rebuttal. Thank you, Your Honor. There's a couple of points that I want to make, first of all. All three of the judges on this panel have cited to the record or said things about the record, and I really suggest that the records looked at very closely. If you look at what Chloe's capabilities were her freshman and sophomore year when she came to Forest Hills to Anderson High School and the kind of young woman she was by the time her junior and senior year occurred, she had made leaps and bounds of gains. In fact, in the long time that I've been doing special education, I would say that the progress that she made was probably more meaningful than almost any other case I've ever been involved with in my entire time. And so I think that that's important to look at. Another point is— Does that mean that if she had had more services at 16, she would have made even greater progress? No, Your Honor. I think because there was a certain level of capability, and I think I also wanted to point to that is that even the district court and the response to our motion to stay indicated that she was incorrect for indicating that Chloe needed to be at that meeting and so that that was not one of the reasons why she overruled the SLRO. But she also did not cite to any preponderance of the evidence. And I think it's important to recognize that what I think the other side is trying to ask you to do is that there will be a formalized outside assessment done for every student on an IEP when they leave high school and go on to whatever life calls for them. What do the 2004 amendments mean? Well, Your Honor, if you look at the 2004 amendments closely and you look at the Ohio Administrative Code, which parlays those, it clearly says, and case law backs it up that we've cited in our brief, that that transition could be part of the student's IEP. So there's a difference between a student that might have a speech issue or a small reading disability and has an IEP related to that, and they can take standardized tests and they can express their opinions. But the SLRO and the district court both recognized in their findings the fact that Chloe could not understand the concept of life beyond school, and then she was not able to express it, and that the only way to determine what her goals and objectives were in the future would be to be around her all the time, and that's what her IEP did. Or use cards. There was discussion. She had visual cue cards and things like that, Your Honor. But in this particular case, and I know I'm out of time, I just want to make one last brief point. When the outside assessments were done, look closely at both of those and what their results were. They were the same results that the school district had identified what Chloe's strengths and abilities were, and they came to the same conclusion as to what life should be like for Chloe beyond school. I think that's also important. Anything else? Speaking for myself, I'm wondering if there is an opportunity for the mediation office to come back in and be involved. Each side stands to lose something in the appeal that's before us, and it could be a lot. It just seems to me that I very much understand the importance of this law, but we have a case before us, and it has been litigated for a long, long time, and I'm just wondering if there's not a way for the parties in this to reach across that divide and speak to one another, perhaps in a way that would be a good example for Chloe, and see if you can't work something out. If I could just briefly respond to that. Both sides did work diligently to come to a conclusion, and your mediation office was wonderful in that process, and they were diligent in the process. The rules of evidence preclude me from indicating to you why that didn't happen, but I understand your point. You do have some more information now than you had at that conclusion, so we shall take it under advisement. We shall provide an opinion in due course if no settlement is reached before due course is reached. Thank you. You may take that into account. Thank you, Counsel. Case will be submitted.